# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>DAVE AND BUSTER'S ENTERTAINMENT, INC., et al.,<br><br>Defendants. | Case No. 1:26-cv-04248-JLT-SAB<br><br>ORDER SCREENING COMPLAINT AND GRANTING LEAVE TO FILE AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY-DAY DEADLINE** |

On June 3, 2026, Plaintiff Joseph Allen, who is proceeding *pro se* and *in forma pauperis*, filed a complaint against Dave and Buster's Entertainment, Inc., Jason Del Campo, Michael Loya, Elizabeth Ybarra, Robert Jenkins, KD Hamilton, and Michael Rangel. (ECF No. 1.) The Court granted Plaintiff's application to proceed *in forma pauperis* with the notice that service would not be undertaken until the Court screened the complaint in due course. (ECF Nos. 3.) The Court now undertakes its screening.

**I.**

**SCREENING REQUIREMENT**

The *in forma pauperis* statute provides that a court shall dismiss a case if, *inter alia*, the complaint is frivolous or malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). In determining whether a complaint fails to state a claim, a court uses the

same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

Moreover, federal courts are under a duty to raise and decide issues of subject matter jurisdiction *sua sponte* at any time it appears subject matter jurisdiction may be lacking. Fed. R. Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). If the Court determines that subject matter jurisdiction is lacking, the Court must dismiss the case. Id.; Fed. R. Civ. P. 12(h)(3).

Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is Joseph Allen, founder and director of Central Valley Prospects ("CVP"), "one of the fastest-growing high school girls' basketball programs in the United States." (ECF No. 1, ¶ 4.) CVP provides services to families of selected students at no cost, including over 70 full-ride scholarship offers secured. (Id.) CVP has built over 30 brand partnerships and has hosted two major showcases. (Id.) This case involves an alleged contractual agreement between Plaintiff and Dave and Buster's, Fresno ("D&B"). (Id. at ¶ 2.) Essentially, beginning in or around 2023, "[Plaintiff] entered into a commission agreement with Dave and Buster's Fresno,

documented in email and text message communications, whereby [Plaintiff] would receive a 20% commission credited toward future bookings in exchange for referring parties, groups, and events to the venue." (Id. at ¶ 18.) Plaintiff alleges that this agreement was approved by General Manager Jason Del Campo and confirmed in writing by Elizabeth Ybarra. (Id.) Plaintiff asserts that the agreement was honored at least once in November 2024. (Id. at ¶ 20.) Yet, following this, D&B would refuse to honor it again. (Id.)

On April 30, 2025, Michael Loya, Events Sales Manager at D&B, observed that Plaintiff had referred groups and events to D&B and that D&B would be "happy to offer your groups exclusive discounts and promotions to go beyond our standard offerings." (Id. at ¶ 21.) Plaintiff alleges that this was confirmed by three other employees who emailed with Plaintiff regarding this understanding. (Id.) This included an email from Ybarra who clarified that pricing and add-ons offered for CVP could not be extended to Plaintiff's partners, but D&B could put something together "for them as your referral once reviewed." (Id. at ¶¶ 3, 23.) Plaintiff notes that Loya's email did not contain any mention of the commission agreement. (Id. at ¶ 22.)

Plaintiff alleges that at one time he directed approximately $40,000 in business to D&B but was never given his commission of $8,000. (Id. at ¶¶ 24, 25.) Plaintiff states that Ybarra and Robert Jenkins told Plaintiff that "they had assumed I was helping them out of goodwill." (Id. at ¶ 25.)

In addition, Plaintiff describes how he directed more than $150,000 of business to D&B. (Id. at ¶ 26.) Per Plaintiff's calculations, he was owed no less than $18,000 per his commission. (Id. at ¶ 27.) Moreover, Plaintiff notes that he also provided items to D&B for use as event giveaways and promotions, as well as placing advertising for D&B on every camper jersey distributed to participating children. (Id. at ¶ 28.) "Over the full course of our relationship, my organization hosted over two dozen youth outings at Dave and Buster's Fresno, held commitment parties, including one broadcast live on Fox and ABC30, organized launch parties, and held anniversary events at the venue." (Id. at ¶ 30.)

On March 29, 2025, CVP hosted its post-showcase celebration at D&B with over 300 planned attendees. (Id. at ¶ 31.) Plaintiff arranged and paid for hotel accommodations for

traveling attendees out of pocket. (Id.) D&B was allegedly prepared for only 50 people. (Id. at ¶ 32.) Due to the lack of preparation, over half of attendees left upset and disappointed. (Id.)

Following Plaintiff trying to enforce the commission agreement and raising concerns regarding the March 29, 2025 event, D&B "refused all future bookings and event requests for [CVP] at their Fresno location. No reason was provided. No conversation was offered. Every email I sent was ignored." (Id. at ¶ 34.) Plaintiff asserts that CVP lost a signature venue. (Id. at ¶ 35.)

On June 3, 2026, Plaintiff filed a complaint bringing five causes of action: 1) breach of contract; 2) fraud and fraudulent misrepresentation; 3) promissory estoppel; 4) intentional interference with prospective business relations; and 5) unjust enrichment. (Id. at pp. 10-12.) For damages, Plaintiff seeks $1,320,500 in damages, including $990,000 in punitive damages. (Id. at pp. 12-13.)

## III.

## DISCUSSION

### A. Subject-Matter Jurisdiction

Based on the complaint, the Court is unable to determine at this time whether it has subject-matter jurisdiction over the matter. For Plaintiff's benefit, the Court discusses below the subject-matter limitations in the federal district courts.

Federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Federal courts can adjudicate only cases that the Constitution or Congress authorize them to adjudicate: those cases involving diversity of citizenship (where the parties are from diverse states), or a federal question, or those cases to which the United States is a party. See id. Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing the contrary rests upon the party asserting jurisdiction. Id. at 377.

From the complaint, it is unclear whether Plaintiff intends to invoke federal question or diversity jurisdiction. Indeed, on the civil cover sheet, Plaintiff has checked both federal question

and diversity as a basis for jurisdiction. (ECF No. 1, p. 18.) Thus, for Plaintiff's benefit, the Court outlines and analyzes both.

Diversity jurisdiction generally permits individuals to bring claims in federal court where the claim exceeds $75,000 and the parties are citizens of different states. See 28 U.S.C. § 1332. For example, if a citizen of New York sues a citizen of California for $75,001, a federal court would have subject-matter jurisdiction to hear that claim. Complete diversity of citizenship occurs when no plaintiff and defendant are domiciled in the same state.

Federal question jurisdiction permits an individual—regardless of the value of the claim—to bring a claim in federal court if it arises under federal law, including the U.S. Constitution. See 28 U.S.C. § 1331. Federal question jurisdiction requires that the federal question appears on the face of a well pleaded complaint, is a substantial component of the complainant's claim, and is of significant federal interest. Federal question subject-matter jurisdiction is frequently derived from federal statutes granting a cause of action to parties who have suffered a particular injury.[1] Without a federal cause of action, a federal district court would be unable to hear the matter because it would be without subject-matter jurisdiction.[2]

The Court finds that Plaintiff has not alleged a basis for either federal question or diversity jurisdiction. To begin with, all of Plaintiff's claims derive from California law, which means there is no federal law implicated in this case. See, e.g., Santana v. Studebaker Health Care Center, LLC, 120 Cal. App. 5th 1, 11-12, 343 Cal. Rptr. 3d 480 (Cal. Ct. App. 2026) (discussing elements of a contract under California law); Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990, 102 P.3d 268 (Cal. 2004) (outlining elements of fraud and fraudulent misrepresentation); Garcia v. World Savings, FSB, 183 Cal. App. 4th 1031, 1040-41, 107 Cal. Rptr. 3d 683 (Cal. Ct. App. 2010) (discussing elements of promissory estoppel); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153-54, 63 P.3d 937 (Cal. 2003) (discussing elements of intentional

[1] Additionally, the Court notes that 28 U.S.C. § 1367 provides for supplemental jurisdiction in federal courts. It allows a federal court to hear a claim over which it does not have independent subject-matter jurisdiction if the claim is related to a claim over which the federal court does have independent jurisdiction, such as federal question jurisdiction.

[2] In contrast, the California Superior Court is a trial court of general jurisdiction, not subject to the limitations outlined herein. See Berry v. Pacific Sportfishing, Inc., 372 F.2d 213, 215 (9th Cir. 1967); Cal. Const. art. VI, § 10.

interference with prospective economic advantage); Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc., 29 Cal. App. 5th 230, 238, 239 Cal. Rptr. 3d 908 (Cal. Ct. App. 2018) (discussing elements of unjust enrichment). Without federal law being implicated, there is no basis for federal question jurisdiction.

Turning to diversity jurisdiction, Plaintiff has alleged that he and all Defendants are citizens of the State of California. (ECF No. 1, ¶¶ 8-15.) This is further demonstrated by the fact that on the civil cover sheet, Plaintiff has indicated that both Plaintiff and Defendants are citizens of California. (Id. at p. 18.) Without complete diversity, there is no basis for diversity jurisdiction. Again, all plaintiffs need to be diverse from all defendants in order to satisfy this jurisdictional requirement. See 28 U.S.C. § 1332.

Therefore, at this time, it does not appear that the Court has subject-matter jurisdiction over the action.

**B. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

Though the Court is skeptical whether Plaintiff could amend his complaint to assert subject-matter jurisdiction, the Court finds leave to amend is warranted at this time. Plaintiff has not demonstrated undue delay, bad faith, or dilatory motive. Accordingly, the Court will allow Plaintiff leave to amend to cure the deficiencies outlined in this order.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed herein, Plaintiff fails to allege a basis for subject-matter jurisdiction and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). If Plaintiff chooses to file an amended complaint, that complaint can be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights or violations of state law. Iqbal, 556 U.S. at 678-79. Importantly, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;
3. The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to the assigned District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: **August 27, 2026**

STANLEY A. BOONE
United States Magistrate Judge